# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MICHAEL ORTEZ, individually, and on behalf of all others similarly situated,

     **Plaintiff,**

v.

UNITED PARCEL SERVICE INC., an Ohio corporation,

     **Defendant.**

---

## PLAINTIFF'S INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT

---

     The Plaintiff, Michael Ortez, individually, and on behalf of all others similarly situated, by counsel, the Sawaya & Miller Law Firm, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., Rule 23 of the Federal Rules of Civil Procedure, Article XVIII § 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 et seq., the Colorado Minimum Wage Orders, 7 C.C.R. 1103-1, and the common law of Colorado, as his Individual, Collective, and Class Action Complaint against the Defendant, United Parcel Service, Inc., states as follows:

## I.      NATURE OF ACTION

1.     The Plaintiff, Michael Ortez ("Ortez") alleges that his former employer, the Defendant, United Parcel Service, Inc. ("UPS"), violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), by failing to pay him, and other employees who were similarly situated ("Class

Members"), the federal minimum wage for all of the hours they worked, and by failing to pay them overtime compensation for the hours they worked in excess of 40 per week.

2.    Ortez also alleges that UPS violated Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 et seq. and the applicable Colorado Minimum Wage Orders, 7 C.C.R. § 1103-1 (collectively, "Colorado Wage and Hour Law") by failing to pay Ortez and the Class Members the minimum wages and overtime compensation that were due to them under the State Wage and Hour Law. UPS also violated the Colorado Wage and Hour Law by failing to provide Ortez and the Class Members with lunch and rest breaks that are mandated by the Colorado Minimum Wage Orders.

3.    Ortez alleges that UPS retaliated against him in violation of the FLSA by terminating his employment and failing to hire him on a permanent basis because he complained about UPS's pay policies and practices.

4.    Ortez also alleges that UPS retaliated against him in violation of the public policies enunciated in Colorado Wage and Hour Law and the Colorado Labor Peace Act, C.R.S. § 8-3-101 et seq., thus committing termination against public policy under the common law of Colorado.

5.    Ortez brings this action to obtain damages for himself and a Class consisting of hourly, nonexempt, seasonal employees who were deprived of minimum wages, overtime compensation, and breaks in violation of the FLSA and Colorado Wage and Hour Law. He seeks declaratory and equitable relief, unpaid minimum wages, unpaid wages, front pay, liquidated damages, statutory penalties, interest, and reimbursement for reasonable attorneys' fees and the costs of this action.

## II.    JURISDICTION AND VENUE

6.    This Court has original jurisdiction over Ortez's FLSA claims because those claims arise under the laws of the United States. 28 U.S.C. § 1331; 29 U.S.C. § 216(b).

7.    The Court has supplemental jurisdiction over Ortez's claims under Colorado state law because those claims are so related to Ortez's FLSA that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

8.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims of Ortez and the Class occurred in this District. 28 U.S.C. § 1391(b)(2).

## III.    PARTIES

9.    Plaintiff Michael Ortez ("Ortez") is a citizen of the United States of America who resides in Jefferson County, Colorado. The address of Ortez's counsel is 1600 Ogden Street, Denver, Colorado 80218.

10.    Defendant United Parcel Service, Inc. ("UPS") is an Ohio corporation with its principal office at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328. UPS is principally engaged in the business of international package delivery.

11.    At all times relevant to this Complaint, Ortez was employed by UPS as a seasonal employee.

## IV.    FACTUAL ALLEGATIONS

### A.  General Allegations

12.    UPS is a multinational corporation that claims to be the world's largest package delivery company.

13.    UPS's gross income during 2015 and 2016 was more than $500,000.00 per year.

14.     In the Fall of 2015, UPS hired thousands of seasonal drivers and package handlers ("Seasonal Employees") to support an increase in business volume that was expected to last from November 2015 to January 2016 ("2015 Holiday Season").

15.     In the Fall of 2016, UPS again hired thousands of Seasonal Employees, this time to work from November 2016 to January 2017 ("2016 Holiday Season").

16.     During the 2016 Holiday Season, UPS advertised its need for Seasonal Employees in Colorado, advising applicants that working as a Seasonal Employee was an "entry point" for a lucrative, permanent career with UPS.

17.     UPS represented to applicants that 37% of the Seasonal Employees it hired during the 2015 Holiday Season had obtained permanent positions with UPS.

18.     Based on UPS's representations, Ortez applied and was hired for a Seasonal Employee position in Englewood, Colorado during November 2016.

19.     On information and belief, UPS hired hundreds of Seasonal Employees to work in Colorado during the 2016 Holiday Season.

20.     Ortez's rate of pay during his employment was $17.80 per hour.

21.     Ortez began working for UPS on December 1, 2016.

22.     On his first day of work, Ortez was required to attend an Orientation.

23.     Ortez was then required to attend Training from December 5, 2016 to December 8, 2016.

24.     UPS did not pay Ortez for the hours he spent at the Orientation and Training in a timely manner. Ortez did not receive any compensation for those hours until January 3, 2017.

25.     On December 9, 2016, Ortez worked 11.75 hours for UPS.

26.     On December 12, 2016, Ortez again worked 11.75 hours for UPS.

27.     As of the filing of this Complaint, UPS has not paid Ortez anything for the hours he worked on December 9, 2016 and December 12, 2016.

28.     Ortez continued to work for UPS until December 27, 2016.

29.     Throughout his employment with UPS, Ortez and the Seasonal Employees consistently worked 10 to 12 hours per day.

30.     Ortez missed three days of work during December 2016 after he developed Bronchial Pneumonia from working in a truck with a broken heater in sub-zero temperatures.

31.     Ortez had previously asked UPS to repair the heater in his truck, but was told that his request was a "low priority."

32.     During the 2016 Holiday Season, Ortez and the other Seasonal Employees were required to report to work at approximately 8:00 a.m. each day, and to spend one to two hours loading, packing and organizing UPS's trucks prior to driving their routes.

33.     UPS has a policy or practice of paying Seasonal Employees nothing for the hours they spend loading, packing, and organizing UPS's trucks prior to driving their routes.

34.     According to Ortez's supervisor, UPS does not begin paying Seasonal Employees until they "hit the road."

35.     As a result of this policy or practice, UPS failed to pay Ortez and the Seasonal Employees for one hour or more for each day that they were employed.

36.     Also as a result of UPS's policy or practice, Ortez and the Seasonal Employees were not paid time and a half for each hour they worked in excess of 40 per week.

37.     UPS also has a policy or practice of instructing Seasonal Employees to refrain from taking lunch breaks and/or rest breaks during the day.

38.     Ortez was given such instructions when he requested breaks on December 9, 2016, December 13, 2016, and December 26, 2016.

39.     As a result of this policy or practice, Ortez and the Seasonal Employees were denied breaks during the 2015 and 2016 Holiday Seasons.

40.     Ortez and the other Seasonal Employees were not given any compensation for the rest breaks they were prevented from taking.

41.     Ortez, believing that UPS's policies and practices were illegal, told his supervisor that UPS was "breaking the law" in its conduct toward Seasonal Employees during several conversations in December 2016.

42.     Ortez's supervisor responded to Ortez's complaints by calling him "needy" and accusing him of "bitching" about his pay.

43.     On December 23, 2016, Ortez filed a complaint with UPS's Human Resources Office after he was paid for only one of the three weeks he had worked.

44.     On December 27, 2016, Ortez reported to work as instructed by UPS. When he arrived, Ortez was approached by his supervisor, who told him he was "no longer needed."

45.     Ortez was not permitted to perform further work for UPS, and was not paid for coming to work on December 27, 2016.

46.     Unlike the other Seasonal Employees at UPS's Englewood, Colorado location, Ortez was terminated by UPS prior to the end of the 2016 Holiday Season.

47.     Ortez eventually found work with another employer, making 17% less than he would have earned working for UPS.

48.     To date, Ortez has not been paid for 26.6 hours of work he performed for UPS.

49.     Ortez has also not been compensated for the 36 breaks he was prevented from taking.

50.     On information and belief, each of the Seasonal Employees in Colorado lost similar amounts during the 2015 and 2016 Holiday Seasons because of UPS's policies and practices.

51.     At all times relevant to this Complaint, UPS was aware of the requirements of the FLSA and Colorado Wage and Hour Law. UPS has previously been sued by Seasonal Employees in at least two other jurisdictions based on pay policies and practices that are similar to the policies and practices described above.

52.     As such, UPS knew that it was required to pay Ortez and the Seasonal Employee Class Members for all of their work, and that it was required to pay overtime compensation for all overtime labor.

## B.  COLLECTIVE ALLEGATIONS

53.     Ortez brings Counts I and II of this Complaint under Section 216 of the FLSA, 29 U.S.C. §216(b), on behalf of himself and the members of the following proposed Class:

> **All hourly, nonexempt, seasonal employees who worked for UPS in Colorado and were paid less than the federal minimum wage for any hour of work, and/or less than one and one-half times their hourly rate for any hour of overtime, at any time within the three years prior to the filing of this action.**

54.     These claims are properly brought as a Section 216 collective action because Ortez and the Members of the proposed Class are similarly situated:

   a.  The Class Members were all employed by UPS as seasonal drivers and package handlers ("Seasonal Employees");

   b.  The Class Members all worked for UPS in Colorado during the last three years;

c. The Class Members were all subjected to the same policies and practices, namely: (1) UPS's policy or practice requiring Seasonal Employees to load, pack, and organize the packages in UPS trucks prior to driving their routes; and (2) UPS's policy or practice that Seasonal Employees would not be paid until they were driving their routes; and

d. The Class Members' claims, and any defenses thereto, may be established through common proof and representative evidence.

55. The pooling of resources will lower the burden on individual Class Members asserting their rights under the FLSA. Moreover, it is both procedurally feasible and most fair to both parties to adjudicate this action collectively.

## C. CLASS ALLEGATIONS

56. Ortez brings Counts III, IV and V of this Complaint as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the members of the following proposed Class:

> **All hourly, nonexempt, seasonal employees who worked for UPS in Colorado and were paid less than Colorado's minimum wage for any hour of work, and/or less than one and one-half times their hourly rate for any hour of overtime, and/or were prevented from taking legally-mandated breaks, at any time within the three years prior to the filing of this action.**

57. Ortez's claims are properly brought as a class action under Rule 23 because the proposed Class satisfies the Rule's requirements for numerosity, commonality, typicality, and adequacy, as set forth below.

## Numerosity

58.     UPS employed hundreds of Seasonal Employees in Colorado during the 2015 and 2016 Holiday Seasons. As such, there are hundreds of potential Class Members. Joinder of all such Class Members is entirely impracticable.

## Commonality

59.     There are questions of law and fact that are common to the Class, which questions predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to:

> (1) Whether UPS pays Seasonal Employees for all hours worked;
>
> (2) Whether UPS had a policy or practice of requiring Seasonal Employees to load, pack, and organize packages prior to driving their routes;
>
> (3) Whether Seasonal Employees regularly load, pack, and organize packages prior to driving their routes;
>
> (4) Whether UPS paid Seasonal Employees the minimum wages applicable under Colorado Wage and Hour Law for all hours spent loading, packing, and organizing packages;
>
> (5) Whether, as a result of its policy or practice requiring Seasonal Employees to load, pack, and organize packages prior to driving their routes, UPS failed to pay Seasonal Employees at a rate of 1.5 times their hourly rates for all overtime hours worked;

(6) Whether UPS had a policy or practice of instructing Seasonal Employees to refrain from taking lunch breaks that are mandated by the Colorado Wage and Hour Law;

(7) Whether UPS had a policy or practice of instructing Seasonal Employees to refrain from taking rest breaks that are mandated by the Colorado Wage and Hour Law; and

(8) Whether Seasonal Employees are harmed by UPS's policies and practices regarding pre-trip duties and rest breaks.

## Typicality

60.     The claims of Ortez are typical of the claims of the Class. Like all of the Class Members, Ortez was required to pack and organize a UPS truck prior to beginning his routes. He was not compensated for that work. Also, like all of the Class Members, Ortez was prevented from taking lunch and rest breaks. Moreover, the defenses and legal theories UPS will assert in response to such claims are likely to be the same as to all Class Members.

## Adequacy

61.     Ortez will fairly and adequately protect the interests of the Class. He has retained the Sawaya & Miller Law Firm, counsel that is experienced in class action litigation and wage and hour law. Ortez and his counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class, and have adequate resources to assure that the interests of the Class will not be harmed.

62.     Additionally, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members

of the Class which would establish incompatible standards of conduct for UPS, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interest.

63.     UPS has acted or refused to act on grounds generally applicable to the Class by requiring all Class Members to perform unpaid labor, and preventing all Class Members from taking breaks. As such, final injunctive or declaratory relief with respect to the Class as a whole is appropriate.

64.     No member of the Class has expressed any interest in controlling the prosecution of a separate action. On information and belief, no other litigation concerning the subject matter of this action has been commenced by any member of the Class.

## V.     INDIVIDUAL AND COLLECTIVE CLAIMS

### COUNT I:

#### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE FLSA

#### 29 U.S.C. § 206

65.     Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

66.     At all times relevant to this Complaint, UPS was an "employer," and an "enterprise engaged in commerce," as defined by the FLSA. 29 U.S.C. § 203(d), (s).

67.     At all times relevant to this Complaint, Ortez and the Class Members were "employees" entitled to the protections of the FLSA. 29 U.S.C.§ 203(e).

68.     At all times relevant to this Complaint, UPS was required to pay Ortez and the Class Members a minimum wage of $7.25 per hour for all of the hours they worked. 29 U.S.C. § 2016(a)(1)(C).

69.     UPS violated the FLSA by failing to pay Ortez and the Class Members for all of the hours they worked.

70.     UPS maintained a policy or practice requiring Seasonal Employees, including Ortez and the Class Members, to load, pack, and organize packages on UPS trucks prior to driving their routes each day.

71.     UPS did not pay Ortez and the Class Members for the time they spent loading, packing, and organizing packages on UPS trucks.

72.     UPS also failed to pay Ortez for the work he performed on December 9, 2016 and December 12, 2016.

73.     At all times relevant to this Complaint, UPS was aware of the requirements of the FLSA, having been sued for violating the rights of Seasonal Employees in other jurisdictions. As such, UPS's violations of the FLSA were willful.

## COUNT II:

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FLSA

### 29 U.S.C. § 207

74.     Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

75.     Under the FLSA, UPS was required to pay Ortez and the Class Members one and one-half times their regular rate of pay for all hours worked in excess of 40 per week. 29 U.S.C. § 207.

76.     At all times relevant to this Complaint, UPS maintained a policy or practice requiring Seasonal Employees, including Ortez and the Class Members, to load, pack, and organize packages on UPS trucks prior to driving their routes each day.

77.     As a result of this policy or practice, UPS violated the FLSA by failing to pay Ortez and the Class Members one and one-half times their regular rate of pay for all of the overtime hours they worked.

78.     Because UPS was fully aware of the overtime requirements of the FLSA at all times relevant to this Complaint, UPS's violations were willful.

## VI.     INDIVIDUAL AND CLASS CLAIMS

### COUNT III:

**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
COLORADO WAGE AND HOUR LAW**

**C.R.S. § 8-4-101 et seq.
7 C.R.S. § 1103-1:3**

79.     Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

80.     At all times relevant to this Complaint, UPS was an "employer," as defined by the Colorado Wage and Hour Law. C.R.S. 8-4-101(6).

81.     At all times relevant to this Complaint, UPS was part of the "service industry" covered by the Colorado Minimum Wage Orders ("CMWO"). 7 C.C.R. § 1103-1:2(A).

82.    At all times relevant to this Complaint, Ortez and the Class Members were employees of UPS under Colorado Wage and Hour Law. 7 C.C.R. § 1103-1:2

83.    Under the CMWO, UPS was required to pay Ortez and the Class Members a minimum wage of $8.00 per hour for all hours worked during 2014; $8.23 per hour for all hours worked during 2015; $8.31 per hour for all hours worked during 2016; and $9.30 per hour for all hours worked during 2017.

84.    UPS violated the Colorado Wage and Hour Law by requiring Ortez and the Class Members, to load, pack, and organize packages on UPS trucks prior to driving their routes each day, but failing to compensate Ortez and the Class Members for the hours spent performing such duties.

85.    At all times relevant to this Complaint, UPS was aware of the requirements of the CMWO, and as such, the company's violations of Colorado Wage and Hour Law were willful.

**COUNT IV:**

**FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF COLORADO WAGE AND HOUR LAW**

**C.R.S. § 8-4-101 et seq.**
**7 C.R.S. § 1103-1**

86.    Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

87.    Colorado Wage and Hour Law requires employers to pay employees "time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the

starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages." 7 C.C.R. 1103-1:4.

88.    Ortez and the Class Members regularly worked more than 40 hours per week for UPS.

89.    Because of its policy or practice requiring Seasonal Employees to load, pack, and organize packages and not paying the Seasonal Employees for such work, UPS did not pay Ortez and the Class Members time and one-half for all of the hours they worked.

90.    As such, UPS violated the Colorado Wage and Hour Law by failing to pay overtime compensation to Ortez and the class members.

91.    Because UPS was fully aware of the requirements of Colorado Wage and Hour Law when it failed to pay overtime compensation to Ortez and the Class Members, UPS's violations were willful.

## COUNT V:

### FAILURE TO PROVIDE BREAKS IN VIOLATION OF COLORADO WAGE AND HOUR LAW

### C.R.S. § 8-4-101 et seq.
### 7 C.R.S. § 1103-1(7), (8)

92.    Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

93.    Under the Colorado Wage and Hour Law, Ortez and the Class Members were entitled to uninterrupted, duty-free, 30-minute meal breaks during every work shift that lasted five hours or more. 7 Colo. Code Regs. § 1103-1(7).

94.    Ortez and the Class Members were also entitled to compensated 10-minute rest breaks "for each four (4) hours or major fractions thereof" that they worked. 7 C.C.R. § 1103-1(8).

95.     At all times relevant to this Complaint, UPS had a policy or practice of instructing Seasonal Employees, including Ortez and the Class Members, from taking legally-mandated breaks.

96.     Ortez and the Class Members consistently worked 10 to 12 hours each day. They were nevertheless prevented from taking meal breaks and rest breaks by UPS's policies and practices.

97.     UPS was aware of the requirements of the Colorado Wage and Hour Law when it prevented Ortez and the Class Members from taking breaks. Its unlawful conduct was therefore willful.

## VII.    INDIVIDUAL RETALATION CLAIMS

### COUNT VI:

### RETALIATION IN VIOLATION OF THE FLSA

### 29 U.S.C. § 215(a)(3)

98.     Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

99.     The FLSA prohibits any employer from "discharge[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding…." 29 U.S.C. § 215(a)(3).

100.    Ortez engaged in protected activity under the FLSA by communicating to his supervisor his belief that UPS's pay policies were illegal.

101.    Ortez also engaged in protected activity by complaining to Human Resources that UPS had not paid him for all of the time he worked.

102.    UPS retaliated against Ortez in violation of the FLSA by terminating his employment and by failing to hire him for a permanent position after the 2016 Holiday Season.

103.    UPS would not have terminated Ortez or failed to hire him but for his participation in protected activity.

104.    UPS's retaliatory conduct has caused Ortez to suffer harm, which harm is ongoing.

**COUNT VII:**

**TERMINATION AGAINST PUBLIC POLICY**

**Colo. Const. art. XVIII, § 15**
**C.R.S. § 8-4-120**
**C.R.S. § 8-3-108**
**Colorado Common Law**

105.    Ortez incorporates the facts alleged in each of the foregoing paragraphs as if fully set forth below.

106.    The Colorado Constitution declares that "the Colorado minimum wage… shall be paid to employees who receive the state or federal minimum wage." Colo. Const. art. XVIII, § 15.

107.    The Colorado Wage Act provides that "[n]o employer shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law or who has testified or may testify in any proceeding on behalf of himself, herself, or another regarding afforded protections under this article." C.R.S. § 8-4-120.

108.    The Colorado Labor Peace Act states that "employees have the right… to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection." C.R.S. § 8-3-106. The Act declares that "[i]t is an unfair labor practice for an

employer, individually or in concert with others, to [i]nterfere with, restrain, or coerce his employees in the exercise of" this right. C.R.S. § 8-3-108.

109. Ortez engaged in activity that was protected by the Colorado Constitution, the Colorado Wage Act, and the Colorado Labor Peace Act, when he complained to his supervisor and Human Resources that UPS's pay policies were illegal.

110. UPS retaliated against Ortez in violation of the public policies enunciated in **Colo. Const.** art. XVIII, § 15, C.R.S. § 8-4-120, and C.R.S. § 8-3-108 when it terminated Ortez's employment because of his participation in such protected activity.

111. UPS's retaliatory conduct has caused Ortez to suffer harm, which harm is ongoing.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff respectfully asks the Court to find in his favor, and in addition to award the Plaintiff and the Class Members:

A. An Order granting conditional certification to the Class and appointing Plaintiff and his counsel as class representative and representation;

B. An Order declaring that the practices alleged herein violate the FLSA and Colorado Wage and Hour Law;

C. Back wages to Plaintiff and Class Members for all uncompensated hours worked, unpaid minimum wages, and unpaid overtime compensation;

D. Liquidated damages to Plaintiff and Class Members in an amount equal to the back wages awarded;

E. Statutory damages to Plaintiff and Class Members pursuant to C.R.S. § 8-3-109;

F.  Immediate reinstatement for Ortez, or in the alternative, front pay for a period of two

   years following the Court's Order;

G.  Compensatory and punitive damages for Ortez in an amount to be determined at trial;

H.  Plaintiffs' reasonable attorney's fees and costs; and

I.  All other and further relief as the Court may find to be equitable and just.

Respectfully submitted,

*/s/ Adam M. Harrison*

_____

David H. Miller
Adam M. Harrison
SAWAYA & MILLER
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303.839.1650
E-mail: dmiller@sawayalaw.com
aharrison@sawayalaw.com
*Counsel for the Plaintiff Michael Ortez, individually and on behalf of all others similarly situated*